UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Caleb Pautz, individually and on behalf of all others similarly situated, | 3:22-cv-02911 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Heineken USA Incorporated, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Heineken USA Incorporated ("Defendant") manufactures, labels and sells "Ranch Water" that it describes as "Hard Seltzer" and "Classic Lime" under the Dos Equis brand ("Product").




2. Other relevant representations include the larger lime green x background, "Naturally Flavored With Other Natural Flavors," and "4.5% Alc./Vol." ("ABV" or alcohol by volume).

## I. ORIGINS OF RANCH WATER

3. Ranch water likely originated in the 1960s in the blazing sun on West Texas ranches where cowboys worked long days.

4. They would often begin the day with a thermos full of tequila and ice, and after lunch they would add lime, a staple of their Tex-Mex cuisine.

5. At some point, carbonated water was added to improve refreshment.

6. Ranch water's popularity has spread beyond Texas for numerous reasons.

7. First, according to the founder of a brand of ranch water, its lack of a sweetener dovetails with consumers' "shift[ing] away from sugary, high-calorie cocktails."

8. Second, its limited and simple ingredients are consistent with consumer avoidance of beverages with synthetic components in favor of what they can make at their backyard parties.

9. Third, ranch water is not highly processed through complicated machinery, and made by pouring tequila, lime juice and sparkling water over ice, a formula that works even for canned and ready-to-drink ("RTD") versions.

10. This means RTD ranch water will be similar to those made and served at authentic Texas icehouses, open-air dive bars where Texans go to cool off.

11. Fourth, tequila, based on the agave plant, is "the fastest-growing spirits category," resulting in its use in numerous canned beverages.

12. Fifth, ranch water fits into the trend of "better for you" alcoholic drinks which are based on alcohol but contain natural and simple ingredients including fruit.

13. Sixth, novel technologies and regulatory adjustments have resulted in a boom of "canned cocktails," which are alcoholic beverages containing spirt ingredients instead of having a base of malt liquor or beer based on sugar or barley.

14. Seventh, ranch water is considered an "upgrade to a hard seltzer," made with "vague ingredients such as malted liquor and natural flavors," as opposed to sparkling water, lime and tequila.[1]

15. Eighth, its roots in the western rancher mythos appeal to a sense of adventure.

## II. LABEL INDICATES PRODUCT WILL CONTAIN RANCH WATER INGREDIENTS

16. Consumers will expect the Product contains ingredients associated with ranch water because that is what the packaging and label tells them.

17. First, "Hard Seltzer" beneath "Ranch Water" contributes to the expectation the Product will contain tequila because "hard" in the context of alcohol refers to distilled spirits or "hard liquor."

18. The one exception applies to the fermented apple beverage of "hard cider."

19. Various theories exist about how the term "hard" became associated with cider.

20. One contends that "hard" was implicit in the Middle English definition of cider as a "strong drink."

21. Another posits that "hard" distinguished fermented apple juice with alcohol from non-fermented and non-alcoholic fresh pressed apple juice.

22. Based on this historical association, the IRS and regulatory authorities adopted the term "hard cider" only in the context of fermented apple beverages.

---

[1] https://www.thedrinksbusiness.com/2022/05/how-tequila-and-hard-seltzer-trends-are-boosting-ranch-waters-popularity/

23. Outside of this context, however, consumers understand "hard" in the context of alcoholic beverages to refer to distilled spirits, like tequila.

24. RTD ranch water brands which contain tequila, sparkling water and real lime are sold by competitor brands like Ranch Rider and are not technologically or commercially unfeasible.



### III.   PRODUCT DOES NOT CONTAIN TEQUILA

25. The representations are misleading because though the Product contains carbonated water, it does not contain tequila or lime, shown through their absence from the ingredient list on the side of the box and cans.

> **INGREDIENTS:** CARBONATED WATER, ALCOHOL (FROM SUGAR), NATURAL FLAVORS, CITRIC ACID, SODIUM CITRATE.

26. Instead of tequila from agave, the alcohol is from a fermented sugar base, indicated by "Alcohol (From Sugar)."

27. In place of limes, the Product uses "Natural Flavors [and] Citric Acid" to deliver a

lime taste.

28. Natural flavors refers to a synthesized blend of substances prepared in a laboratory which may contain not more than a de minimis or negligible amount of lime.

29. That the front of the labeling states "Naturally Flavored With Other Natural Flavors" does not tell consumers the Product does not contain lime, because this statement does not say "Lime Flavored With Other Natural Flavors."

30. That the label states "Classic Lime" makes it more likely purchasers will expect real lime, because "classic" is understood as original or unmodified, like an actual lime.

31. Malt beverages such as the Product are required to indicate the class they fit into.

32. "Ranch Water" above "Hard Seltzer" does not identify the Product's base class and/or type designation, which is beer.

33. Nowhere on any visible part of the packaging or label are consumers told they are not buying a beverage without tequila but actually one classified as a flavored beer.

34. The representations are misleading because "Hard Seltzer" does not indicate the class of malt beverages the Product fits in, preventing consumers from knowing the type of alcoholic drink they are buying.

35. The Product's use of the term "Hard Seltzer" is false, deceptive and misleading because it does not contain any distilled spirits such as tequila, but is from a fermented sugar base.

## IV.   CONCLUSION

36. The Product contains other representations and omissions which are false and misleading.

37. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $13.99 for a six-pack of 12 oz cans, excluding tax and

sales.

## Jurisdiction and Venue

38.  Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

39.  The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

40.  Plaintiff is a citizen of Illinois.

41.  Defendant is a New York corporation with a principal place of business in White Plains, Westchester County, New York.

42.  The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

43.  The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores and over the internet, in the States Plaintiff seeks to represent.

44.  Venue is in this District with assignment to the East St. Louis Division because a substantial part of the events or omissions giving rise to these claims occurred in Madison County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

## Parties

45.  Plaintiff Caleb Pautz is a citizen of Hamel, Madison County, Illinois.

46.  Defendant Heineken USA Incorporated is a New York corporation with a principal place of business in White Plains, Westchester County, New York.

47.  Defendant is one of the world's largest sellers of alcoholic beverages under dozens

of brands, including Dos Equis beer, known for its authenticity.

48.     Plaintiff purchased the Product at locations including but not necessarily limited to Walmart in Collinsville, Illinois, in the fall of 2022, and/or among other times.

49.     Plaintiff read "Ranch Water," "Hard Seltzer," "Classic Lime" and the flavor statement, and expected the Product contained some alcohol from tequila and lime ingredients.

50.     Plaintiff bought the Product at or exceeding the above-referenced price.

51.     Plaintiff paid more for the Product than he would have had he known the above-referenced facts or would not have purchased it.

52.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

53.     Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

54.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

55.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other brands of ranch water, because he is unsure whether those representations are truthful.

### Class Allegations

56.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, West Virginia, Arkansas, South Carolina, Maine and Utah who purchased the Product during the statutes of limitations for each

cause of action alleged.

57. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

58. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

59. Plaintiff is an adequate representative because his interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*</u>

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Plaintiff saw and relied on the label and expected the Product contained some alcohol from tequila and lime ingredients.

66. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

67. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

68. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

69. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

70. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained some alcohol from tequila and lime ingredients.

71. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

72. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was alcohol from distilled spirits, tequila, and lime ingredients.

73. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained some alcohol from tequila and lime ingredients.

9

74. Defendant's representations affirmed and promised that it contained some alcohol from tequila and lime ingredients.

75. Defendant described the Product so Plaintiff believed it contained some alcohol from tequila and lime ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

76. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

77. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the Dos Equis brand.

78. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

79. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

80. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

81. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

82. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained some alcohol from tequila and lime ingredients.

83. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that it

contained some alcohol from tequila and lime ingredients, and he relied on its skill and judgment to select or furnish such a suitable product.

### Negligent Misrepresentation

84. Defendant had a duty to truthfully represent the Products, which it breached.

85. This duty was non-delegable, based on Defendant's holding itself out as having special knowledge and experience in this area, custodian of the Dos Equis brand, recognized for its authenticity in alcoholic beverages.

86. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality and transparency the Dos Equis brand has been known for.

87. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

88. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

89. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

90. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained some alcohol from tequila and lime ingredients.

91. Defendant knows the Product does not contain tequila but relies on consumers' confusion about ranch water and the term "hard seltzer" to make them think otherwise.

### Unjust Enrichment

92. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated:   December 12, 2022

                                                                Respectfully submitted,

                                                                /s/ Spencer Sheehan
                                                                 Sheehan & Associates, P.C.
                                                                 60 Cuttermill Rd Ste 412
                                                                 Great Neck NY 11021
                                                                 (516) 268-7080
                                                                 spencer@spencersheehan.com